33 F.Supp.2d 1127 (1998)
Charles E. EMMENEGGER, et al., Plaintiffs,
v.
BULL MOOSE TUBE COMPANY, et al., Defendants.
No. 4:96CV1095 CDP.
United States District Court, E.D. Missouri, Eastern Division.
November 12, 1998.
*1128 *1129 *1130 *1131 David W. Harlan, Partner, Melanie R. King, Gallop and Johnson, St. Louis, MO, for Charles E. Emmenegger, Robert F. Ritzie, James E. Riley, plaintiffs.
James R. Dankenbring, Partner, Francis E. Pennington, III, Partner, Thomas W. Jerry, Francis X. Neuner, Jr., Dankenbring and Greiman, Clayton, MO, for Bull Moose Tube Company, Caparo, Inc., Bull Moose Tube, Ltd., Swraj Paul, defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
This ERISA case is before the Court on plaintiffs' motion for attorney's fees and bill of costs. Plaintiffs were highly paid executives who sued their former employer and its owner for denying them benefits to which they were entitled under a phantom stock plan. On July 20, 1998, the Court entered a judgment against defendants totaling over $8.7 million.[1]
Plaintiffs have now filed a bill of costs seeking $46,557.41, and a motion for attorney's fees seeking fees of $726,913.95, plus $16,323.87 in computer research charges, additional yet-to-be calculated fees for preparing the fee application, and a 1.25 percent enhancement of the basic fees. Defendants have objected both to the bill of costs and to the fee application on various grounds. After due consideration of the parties' submissions and the relevant law, the Court will award reasonable attorney's fees in the amount of $682,473.88 and taxable costs in the amount of $14,463.80.

I. Plaintiffs' Right to Recover Attorneys Fees and Costs

ERISA authorizes a court "in its discretion" to allow "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Although an award of attorney's fees is not mandatory, see Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir.1984), there is a presumption that a prevailing plan beneficiary should recover reasonable attorney's fees unless "special circumstances" would make such an award inequitable. See Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, 25 F.3d 616, 623 (8th Cir.1994). In deciding whether to award attorney's fees, a court should consider the following factors: (1) the opposing party's degree of culpability or bad faith, (2) its ability to pay, (3) the potential deterrent effect of a fee award, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. See Maune v. International Bhd. of Elec. Workers, 83 F.3d 959, 963 (8th Cir.1996). The burden of proving "special circumstances" to overcome the presumption in favor of an attorney's fees award is on the unsuccessful party. Lutheran Med. Ctr., 25 F.3d at 624.
The Court believes that the memorandum opinion that it entered in this case, reported as Emmenegger v. Bull Moose Tube Co., 4:96CV1095 CDP, 13 F.Supp.2d 980 (E.D.Mo.1998), adequately addresses the first and fifth factors set forth in Maune. As the Court previously found, defendants' decision to pay plaintiffs only the book value of their phantom stock shares, rather than those shares' much higher redemption value, was clearly unreasonable. The Court also determined that plaintiffs were retaliated against for exercising their rights under the phantom stock plan. Finally, the Court found defendants' explanation that plaintiffs *1132 Emmenegger and Ritzie were terminated for disciplinary reasons unworthy of credence.
Other of the Maune factors also weigh in favor of an award of fees in this case. Defendants clearly have the resources to pay plaintiffs' costs and reasonable attorney's fees, given that the conglomerate company has almost one billion dollars in annual revenue. Furthermore, although plaintiffs appear to have sought principally to benefit themselves in bringing this action, the Court believes that an award of costs and fees under the ERISA statute may well deter defendants and others from engaging in similar misconduct in the future. In sum, the Court finds such an award in this matter to be well justified.
As in many cases, neither party here has distinguished properly between items that can be recovered as taxable "costs" and items properly includable in a reasonable attorney's fee. Defendants spend significant time arguing that certain of plaintiffs' claimed costs are improper under the general costs statute, 28 U.S.C. § 1920, while ignoring that even if a certain out-of-pocket expense cannot properly be taxed as a recoverable "cost," it may still be a legitimate item of attorney's fees. Plaintiffs do nothing to correct the error, having filed a bill of costs containing many items not properly taxable, but which may, in fact, be recoverable as attorney's fees. Especially in a case of this fiscal magnitude, it is appropriate that the record reflect the correct legal basis for recovery, and the Court will therefore attempt to sort out which items are recoverable as costs, which are recoverable as attorney's fees, and which are not recoverable at all. While some of the distinctions made here may appear petty, they would be very significant in a case where there is no right to recovery of attorney's fees, but where the prevailing party is entitled to taxation of costs.
Rule 54(d)(1), Fed.R.Civ.P. provides that costs "shall" be allowed to a prevailing party even in the absence of a statute such as that here allowing for attorney's fees. Rule 54(d)(2) sets out the procedure for seeking "attorneys' fees and related non-taxable expenses" when a statute provides for the same. In this district, Local Rules 54-8.02 and 54-8.03 set the timetable for filing motions for attorney's fees and for filing bills of costs. The costs properly taxable under Rule 54(d)(1) are those set out in 28 U.S.C. § 1920, and are limited to the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of [title 28];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of [title 28].
The Court believes that the term "costs" in 29 U.S.C. § 1132(g)(1) refers to the same items of "costs" listed in 28 U.S.C. § 1920. See West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) ("We are aware of no authority to support the counter-intuitive assertion that `[t]he term "costs" has a different and broader meaning in fee-shifting statutes than it has in the cost statutes that apply to ordinary litigation.'") (citation omitted) ("WVUH"). In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court found that the word "costs" in Rule 54(d) must be read in harmony with the word "costs" in § 1920, and in WVUH it found the same to be true with regard to the word "costs" in 42 U.S.C. § 1988. This Court has no reason to believe that "costs" in ERISA's fee-shifting provision, § 1132(g)(1), means anything else. See also Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir.1996) (construing Copyright Act provision). Although the "costs" listed in § 1920 certainly do not include all of the legitimate out-of-pocket expenses reasonably incurred in modern litigation, and the statute may well be somewhat anachronistic, the costs listed in § 1920 are the only "costs" taxable and recoverable in *1133 the absence of a fee-shifting statute. Therefore, plaintiff's bill of costs should only have included items properly allowable under 28 U.S.C. § 1920.
The Court also believes that the ERISA statute's use of the term "a reasonable attorney's fee" should be interpreted the same as that phrase is interpreted in various other federal fee-shifting statutes. See City of Burlington v. Dague, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (stating that Supreme Court case law construing what is a "reasonable" fee applies uniformly to "all" federal fee-shifting statutes); WVUH, 499 U.S. at 88-92, 111 S.Ct. 1138 (considering interpretation of various "attorney's fees" statutes to determine proper interpretation of § 1988); Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that the standards for determining the reasonableness of a fee to be awarded to a successful plaintiff under § 1988 are "generally applicable in all cases in which Congress has authorized an award of fees to a `prevailing party.'"); see also Blum v. Stenson, 465 U.S. 886, 893, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing legislative history of § 1988 for the proposition that "attorney's fees" should be interpreted the same under various fee-shifting statutes).
Thus, "a reasonable attorney's fee" under § 1132(g)(1) must mean
... a reasonable fee for the work product of an attorney. Thus the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit.
Missouri v. Jenkins, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). A reasonable attorney's fee should be "consistent with market rates and practices" in the community. Id. at 287, 109 S.Ct. 2463. Such a fee, of course, must include "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys." Pinkham, 84 F.3d at 294-95 (characterizing the inclusion of charges for long distance telephone calls, facsimile transmissions, messenger services, and express mail as taxable costs under § 1920(4) as harmless error "because such costs were reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should have been included as part of the reasonable attorney's fees awarded") (citing WVUH, 499 U.S. at 87 n. 3, 111 S.Ct. 1138); Neufeld v. Searle Laboratories, 884 F.2d 335, 342 (8th Cir. 1989) (holding that district court abused its discretion in refusing to include in its attorney's fees award the deposition-related travel expenses incurred by prevailing plaintiff's counsel in an ADEA case). Thus, even though plaintiffs improperly included in their bill of costs certain out-of-pocket expenses not taxable as costs, those expenses may in fact be recoverable as part of their reasonable attorney's fees. With these general principles in mind, the Court will examine plaintiffs' claims and defendants' objections.

II. Costs and Out-of-Pocket Expenses

A. Photocopying expenses

Plaintiffs' bill of costs lists $29,449.93 in photocopy expenses, which plaintiffs claim as "fees for exemplification and copies of papers necessarily obtained for use in the case," under § 1920(4). The Court agrees with defendants that plaintiffs have failed to show what, if any, of these photocopy expenses are properly taxable. Under subsection (4) of § 1920, plaintiffs could have legitimately listed amounts they paid to others for production of documents, or could have charged their own photocopy expenses for copying the numerous exhibits that they introduced at trial. Under the costs statute, however, plaintiffs may not recover the photocopy expenses that they incurred in copying their own pleadings and motions for filing with the Court, serving on opposing counsel, or transmitting to their clients; nor does the cost statute cover a party's copying of documents to be produced in discovery, or copying research materials for the convenience of counsel. These are not taxable costs under the statute, because they are not copies of papers "necessarily obtained for use in the case." See McIlveen v. Stone Container Corp., 910 F.2d 1581, 1584 (7th Cir.1990); Thomas v. Treasury Management Ass'n, 158 F.R.D. 364, 372 (D.Md.1994); cf. Jones v. Unisys Corp., 54 F.3d 624, 633 (10th Cir. 1995) (holding that the district court did not *1134 abuse its discretion in denying, inter alia, "costs for `internal copying' of documents by [prevailing defendant's] counsel produced for discovery"). Because plaintiffs have failed to segregate their properly taxable photocopying costs, none of the photocopying charges that they claim will be taxed as costs.
These charges are, however, legitimate out-of-pocket expenses, and plaintiffs have met their burden of showing that charging a client for all photocopies made during the work on the case is the "prevailing practice in the local community." See Jenkins, 491 U.S. at 287 n. 9, 109 S.Ct. 2463. It is notable that defendants make no attempt to argue that attorneys in St. Louis do not customarily charge all photocopying expenses to their clients, because the Court is quite sure that defendants' counsel have billed similar charges to their clients in this very case.[2]
Additionally, the Court believes that the number of photocopies, while quite large, is nonetheless reasonable for a case of this magnitude. This was a paper intensive case, with literally thousands of pages of exhibits received into evidence, and many more exchanged during discovery. Briefs, pleadings, and research materials were voluminous. Counsel had a duty to keep three different clients fully informed of the proceedings, which undoubtedly increased photocopying expenses as well. Plaintiffs have easily met their burden of showing that those expenses represent a reasonable component of their attorney's fees in this case.
In short, the photocopying expenses will not be taxed as costs, but the same amount, $29,449.93, will be included as part of the reasonable attorney's fees of the action.

B. Deposition and Trial Transcripts

Plaintiffs list $13,461.41 as fees of the court reporter on their bill of costs. Defendants contend that plaintiffs should not be allowed to recover court reporter fees for transcripts of depositions taken by defendants, for transcripts of depositions taken by plaintiffs which related exclusively to the defamation counts that were eventually dismissed, or for daily trial transcripts. Under § 1920, taxable costs include fees of a court reporter for all or any part of a stenographic transcript "necessarily" obtained for use in "the case." In order to provide the basis of an award of costs, a deposition cannot have been taken solely for the purpose of investigation or simply for an attorney's convenience. Slagenweit v. Slagenweit, 63 F.3d 719, 721 (8th Cir.1995). Although use of a deposition at trial is direct evidence of its necessity, a deposition unused at trial may still fall within § 1920's ambit if it was reasonably necessary in preparing the case. See Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1184 (Fed.Cir.1996). If, at the time it was taken, a deposition could reasonably be expected to be used for trial, rather than merely for discovery, it may be included in the costs of the prevailing party. See id.; Barber v. Ruth, 7 F.3d 636, 645 (7th Cir.1993). Applying that standard, the Court will allow the deposition fees sought by plaintiffs as part of the taxable costs.[3]
The Court believes that the charge associated with plaintiffs' obtaining a daily trial transcript is, like the photocopy expenses, a part of a reasonable attorney's fee, but not a taxable cost. In this case, the bench trial lasted nine days, although there was a break of several weeks between the sixth and seventh days. While a trial transcript is a necessary expense of an appeal, and therefore taxable on appeal under Rule 39(e), Fed. R.App. P., it cannot be said that a trial transcript is ordinarily necessary for use in the trial itself. See McDowell v. Safeway Stores, Inc., 758 F.2d 1293, 1294 (8th Cir. 1985) (stating that before awarding the cost of a trial transcript, the court should determine that the transcript was not obtained *1135 primarily for the convenience of parties but was necessary for use in the case). The transcript was certainly helpful in this case, and was a reasonable out-of-pocket expense of counsel, reasonably billed to the client, but the Court cannot say it was necessary and therefore taxable under § 1920. See McIlveen, 910 F.2d at 1584. Therefore, it is not a taxable cost, but, like the photocopies, is a component of the reasonable attorney's fee in this case. As plaintiffs explain, defendants themselves chose to order the trial transcript on an expedited basis; as a result, plaintiffs were able to "piggyback" on that order and obtain a daily copy of the transcript without paying the daily copy price. The fact that defendants, as well as plaintiffs, chose to order the daily transcript, again demonstrates its reasonableness as an out-of-pocket component of the attorney's fee.

C. Fees for Witnesses

No expert witnesses actually testified at trial. Plaintiffs have included on their bill of costs, however, the residual travel and subsistence expenses charged by Philip Smith and Scott King, whom plaintiffs designated as expert witnesses but did not call at trial.[4] Defendants took the depositions of Smith and King on December 29, 1997, and December 10, 1997, respectively. Prior to the taking of those depositions, defendants agreed to pay (and did pay) plaintiffs $1,604.41 in costs relating to Smith's deposition[5] and $1,281.50 in costs relating to King's deposition,[6] but refused to pay anything in excess of those sums. As a result, on December 3, 1997 (still before the depositions were actually taken), plaintiffs filed a motion for a protective order requiring defendants to pay the full airfare, travel time, entire deposition preparation time, and actual deposition time of both Smith and King. In the January 23, 1998, memorandum detailing those charges, plaintiffs sought a balance of $3,969.66 relating to Smith and $3,352.00 relating to King. Plaintiffs appear to renew their motion for protective order (on which the Court never ruled) in their motion for attorney's fees, but also seek to recover the residual travel and subsistence expenses for Smith and King in their bill of costs, which lists those expenses as totaling $902.68 ($600.26 for Smith and $302.42 for King).
28 U.S.C. § 1821 limits the witness fee authorized by § 1920 to forty dollars per day, provides that a witness who travels by common carrier be paid "the actual expenses of [that] travel," and requires that a witness whose overnight stay is required be given a "subsistence allowance" not to exceed the maximum per diem allowance prescribed by the Administrator of General Services. See § 1821(b)-(d). In Crawford Fitting Co., the Supreme Court held that the provisions of § 1821 and § 1920 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority." WVUH, 499 U.S. at 86, 111 S.Ct. 1138.
WVUH makes quite clear that ERISA's fee-shifting provision does not constitute authority to shift fees of expert witnesses, because the statute does not make specific reference to expert fees. As alluded to above, the WVUH Court held that 42 U.S.C. § 1988, which, as it was then codified, authorized an award to a prevailing party of "a reasonable attorney's fee as part of the costs," did not provide authority to shift to the losing party fees for services rendered by experts. Writing for a six member majority (all the members of which remain on the present Court), Justice Scalia noted that at least thirty-four statutes in ten different titles *1136 of the United States Code "explicitly shift attorney's fees and expert witness fees." Id. at 89, 111 S.Ct. 1138 (emphasis in original). Because the statutory usage showed "beyond question" that some fee-shifting provisions refer only to attorney's fees, while many others refer to both attorney's fees and expert witness fees, the Court concluded that the two types of fees are "distinct items of expense." Id. at 92, 111 S.Ct. 1138. Justice Scalia reasoned, "If ... the one includes the other, dozens of statutes referring to the two separately become an inexplicable exercise in redundancy." Id. His reasoning is entirely applicable here. As noted above, ERISA's fee-shifting provision, 29 U.S.C. § 1132(g), refers only to "a reasonable attorney's fee and costs of action." It contains no mention of expert fees and thus does not authorize a court to award such fees in excess of § 1821's limits.[7]See Holland v. Valhi Inc., 22 F.3d 968, 979-80 (10th Cir. 1994) (Bright, J.). Thus, the travel and other expenses of King and Smith may not be included in the taxable costs, nor may they be included in the reasonable attorney's fee award under § 1132(g)(1).
Plaintiffs have another basis for recovery of these expenses however. Unlike § 1132(g), Rule 26(b)(4)(C), Fed.R.Civ.P., is not subject to § 1821's limits.[8] The rule provides that "unless manifest injustice would result," a court "shall" require a party seeking discovery to pay the expert "a reasonable fee" for time spent in "responding" to discovery under the subdivision. Although there are conflicting decisions, see, e.g., Benjamin v. Gloz, 130 F.R.D. 455, 457 (D.Colo.1990), the weight of authority holds that Rule 26(b)(4)(C) permits recovery of fees for an expert's preparation time and travel time in connection with his deposition. That is to say, preparation time and travel time are time spent "responding" to discovery. See, e.g., Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 646-47 (E.D.N.Y. 1997); Hose v. Chicago and North Western Trans. Co., 154 F.R.D. 222, 228 (S.D.Iowa 1994); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2034 (2d ed. 1994) ("[I]t is hard to deny that the deposition-preparation process, like the deposition itself, requires additional effort by the expert for which he or she is likely to insist on being paid."). The question then is, would it be "manifestly" unjust to require defendants to reimburse plaintiffs for the entire sums that they paid to Smith and King? Although the Court is not without some misgivings, it believes that given that high standard, the answer to the question is, no. It will therefore grant plaintiffs' motion for protective order, and disallow the related charges in their bill of costs.

D. Computer Assisted Legal Research

Plaintiffs include in their motion for attorney's fees a request for $16,323.87 for computer assisted legal research ("CALR"). Plaintiffs' motion papers establish that this is the fee charged for access to a computerized legal research system, that they billed their clients for the charge by the research system, and that doing so is a customary practice in this legal market. Defendants do not contest that this is the prevailing practice in this legal market, and the Court has no *1137 doubt that defendants similarly billed their client for CALR. The Court is aware from numerous other cases that lawyers in St. Louis typically bill CALR charges to the individual client on whose behalf the research is done, rather than simply raising their hourly rates for all clients to absorb this necessary cost of doing business.
Defendants correctly point out, however, that despite the "discipline of the marketplace" and the fact that this is the prevailing practice in this and most other areas, the prevailing law of this circuit provides that disbursements for CALR cannot be made part of a fee bill. "[T]he law of this Circuit is that [CALR] must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award." Standley v. Chilhowee R-IV School Dist., 5 F.3d 319, 325 (8th Cir.1993). The undersigned respectfully believes that this is an incorrect interpretation of the law, but is nonetheless bound to follow it.
Other circuit courts have approved including reasonable CALR charges in the award made to a prevailing plaintiff. See Haroco v. American Nat'l Bank and Trust Co., 38 F.3d 1429, 1440-41 (7th Cir.1994) (observing that "[t]he added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching"); Wehr v. Burroughs Corp., 619 F.2d 276, 285 (3d Cir.1980) ("Use of computer-aided legal research such as LEXIS, or WESTLAW, or similar systems, is certainly reasonable, if not essential, in contemporary legal practice."). Indeed, it appears that district courts in this circuit have routinely allowed these charges, see, e.g., Benson v. Northwest Airlines, Inc., No. 4-95-581, 1997 WL 122897 at *5 (D.Minn. Mar.18, 1997); Houghton v. Sipco, Inc., 828 F.Supp. 631, 650 (S.D.Iowa 1993) (observing that the denial of reimbursement of CALR charges in a proper case "would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with [CALR]"), rev'd on other grounds, 38 F.3d 953 (8th Cir.1994), and at least one panel of the Eighth Circuit Court of Appeals has held that a "district court acted within the parameters of its discretion in setting the amount of the award" in an ERISA attorney's fee case where the district court specifically allowed a charge for CALR. See Lutheran Med. Ctr., 25 F.3d 616, 623-24 (8th Cir.1994), affirming 814 F.Supp. 799, 805 (D.Neb.1993) (noting that attorney affidavit established that it is standard practice in Omaha, Nebraska, to charge fee-paying clients "for the costs of travel, long-distance telephone calls, facsimile transmissions, photocopying, delivery services, computerized legal research, and copying of medical records, in addition to attorney fees") (emphasis added).
The Court believes that allowing CALR as a component of a reasonable attorney's fee is likewise consistent with the general principles laid down by the Supreme Court that the dictates of the marketplace shall govern what constitutes a reasonable fee. Standley's holding that counsel must simply raise their hourly rates across the board if they wish to recover this expense ignores the marketplace decision made by law firms that they should only charge CALR expenses to those clients and matters which incurred the out-of-pocket expense. Nonetheless, because Standley is controlling authority, this Court cannot allow the $16,323.87 in CALR expense as part of the attorney's fee in this case, although the Court specifically finds that the amount is, in fact, reasonable, that such research was necessary for the prosecution of this case, and that law firms in the St. Louis area customarily bill CALR charges to their fee-paying clients.

III. Hourly Fee Charges

Plaintiffs here seek $726,913.95 in attorney's fees, based on hourly charges of attorneys, paralegals, and paralegal assistants. As the Supreme Court has repeatedly recognized, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433, 103 S.Ct. 1933. That product, known as the "lodestar" figure, is presumed to represent the "reasonable" fee. See Dague, 505 U.S. at 562, 112 S.Ct. 2638. To claim entitlement to the lodestar, the applicant must submit adequate documentation of hours, and *1138 "should make a good-faith effort to exclude from [his] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434, 103 S.Ct. 1933. The applicant bears the burden of showing that any upward adjustment from the lodestar is necessary. Dague, 505 U.S. at 562, 112 S.Ct. 2638.
Plaintiffs' trial team consisted of two attorneys, David Harlan and Melanie King, and one paralegal, Barbara Beatty, who were all present and at counsel table throughout the nine day trial. Additionally, several other attorneys and paralegals and paralegal assistants worked on the case from time to time, both before and during trial.

A. Fees Related to William Buckley's Trial Testimony and Attendance at Trial
Defendants challenge certain fees requested for time spent by attorney William Buckley. Buckley, a member of the same firm as counsel Harlan and King, had been the attorney for plaintiffs during their employment with defendant. He was involved in certain negotiations and testified as a fact witness in the case. The fee request includes charges for time he spent preparing for and testifying as a fact witness in this case, and also charges for his attendance at each day of trial. Defendants argue that Buckley did not actively participate in the trial proceedings, and, for the most part, sat in the rear of the courtroom.
The Court agrees that Buckley's time for testifying and preparing to testify in the case should not have been charged, and will therefore disallow $1,057.50 (4.7 hours at his $225.00 hourly rate). The Court also agrees that the time Buckley recorded for his attendance at trial ($9,675.00 representing forty-three hours) is not a reasonable charge under the circumstances. Buckley was not trial counsel; although he may have wanted to attend the trial because he was intimately involved in the events leading up to this lawsuit, and although his clients may have wanted him to attend and been willing to pay for that attendance, his attendance was not necessary to the prosecution of this case.

B. Miscellaneous Time Charges
Defendants next challenge a variety of miscellaneous time charges made by plaintiffs' attorneys and paralegals for work that defendants argue was clerical in nature or otherwise inappropriate to bill to a client. As an example of the latter, defendants cite charges involving motions for extension of time and time that an attorney billed for changing dollars into British pounds. Although the Court generally views motions for extension of time with some disfavor, it considers them to be part of the routine practice of law (defendants must as well: they filed well over half a dozen during the course of this litigation). The Court does believe, however, that some of the charges identified by defendants are simply clerical in nature, and therefore not allowable. Those time charges are listed in Appendix A to this opinion, and total $3,129.00 (18.1 hours multiplied by King's $150.00 hourly rate plus 4.6 hours multiplied by Beatty's $90.00 hourly rate).

C. Fees for Work Unrelated to this Litigation
Defendants also claim that plaintiffs' attorneys are seeking fees for work that was entirely unrelated to this litigation. After reviewing the parties' submissions, the Court agrees that some of the charges were for unrelated work, and will disallow the time charges listed in Appendix B to this opinion. Those charges total $941.50 (2.0 hours of Buckley's time multiplied by his $225.00 hourly rate ($450.00) plus 1.1 hours of Harlan's time multiplied by his $215.00 hourly rate ($236.50) plus .5 hour of King's time multiplied by her $150.00 hourly rate ($75.00) plus 2.0 hours of Beatty's time multiplied by her $90.00 hourly rate ($180.00)).

D. Fees for Work Performed by Paralegal Assistants
Defendants argue that plaintiffs should not be able to recover fees for paralegal assistants, claiming that the work performed by those individuals was entirely secretarial or clerical in nature. The Court does not agree. Many law firms employ not only paralegals with specific paralegal training and credentials, but also other legal assistants *1139 who are not formally certified as paralegals; the law firms customarily bill the clients for the time of both, although at different hourly rates. That is the situation here. Encouraging the use of lower-cost persons to perform the work of paralegals can facilitate the efficient delivery of legal services and reduce the ever-increasing cost of litigation. Cf. Jenkins, 491 U.S. at 288, 109 S.Ct. 2463 (making the same observation with respect to paralegals). Most of the tasks performed by the paralegal assistants in this case  reviewing documents, preparing deposition exhibits, creating indices, and the like  are not merely clerical in nature. Because those tasks require some legal skills and a degree of familiarity with the case that a secretary ordinarily does not possess, the Court believes that the time a law firm employee takes to perform them may properly be charged separately to the client. Moreover, plaintiffs have provided evidence that the rates charged by the paralegals and by the lower-cost "paralegal assistants" are well within the rates charged in this metropolitan area for such services.[9] Whether the person is called a paralegal and charged at $90 per hour, or called a "paralegal assistant" and charged at $40 per hour, plaintiffs have established that the rates for the services charged are reasonable and customary.
At the same time, the Court does not agree that any time charged by a paralegal or by a paralegal assistant is automatically allowable, any more than any time charged by a lawyer is, ipso facto, allowable. In this case, defendants point out that many of the time entries of Terrill Willis, one of the paralegal assistants at the law firm of plaintiffs' counsel, refer to the "reproduction" of documents as well as other work. Making photocopies is merely clerical work, and the Court, exercising its discretion, will disallow one-half of the 430.60 hours, or $8,612.00 (215.30 hours at $40.00 per hour) that Willis spent engaged in photocopying and other tasks.[10] The Court believes that this is a reasonable estimate of the time that was purely clerical and therefore not properly separately charged to attorney's fees. The Court will allow the remainder of the paralegal assistant time.

E. Fees for Work Claimed to be Unnecessarily Duplicative
Defendants next challenge time billed by plaintiffs' attorneys that, defendants argue, was unnecessarily duplicative. Defendants specifically cite conferences that involved two or more of plaintiffs' counsel and depositions attended by two of plaintiffs' attorneys. Although the Court agrees with defendants with respect to the depositions, it must disagree as to the conferences. Having several attorneys attend the same meeting or participate in the same conference call promotes the exchange of different perspectives on a particular legal strategy and decreases the possibility of some misunderstanding arising at a later date. Indeed, where a number of different attorneys are working on the same matter, arranging for most or all of them, rather than just one of them, to sit in on a conference may be more efficient, as it avoids the one attendee having to repeat what was said to colleagues also working on the case. With respect to the depositions, the Court will disallow 89.40 hours ($13,410.00) of King's time (relating to depositions taken on June 11, 12, 23, August 1, 7, 25, 26, 29, September 2, 4, 5, 8, 17, and November 3) and three hours ($645.00) of Harlan's time (relating to a deposition taken on September 25), for a total of $14,055.00.

F. Fees for Work Claims on Which Plaintiffs Did Not Prevail
Defendants also contend that plaintiffs' counsel should not be awarded fees for the work that they did on non-ERISA claims that were disposed of prior to trial. Defendants refer to the Court's November 18, 1997, memorandum and order in which the Court granted defendants' motion to dismiss plaintiffs' common law breach of contract *1140 claims, and granted summary judgment as to the defamation claims brought by plaintiffs Emmenegger and Ritzie. The Supreme Court has stated that where a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, a court determining an appropriate fee award "should focus on the significance of the overall relief obtained ... in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435, 103 S.Ct. 1933. While the breach of contract claims brought by plaintiffs certainly shared, to some extent, facts with their ERISA claims, the Court finds that defendants should not be required to pay plaintiffs' attorneys for the time that the latter spent bringing and litigating the former. The reason for the Court's decision is quite simple. Because the Court dismissed the breach of contract claims brought by plaintiffs on the ground that they were pre-empted by ERISA, it would be passing odd to allow them to invoke the fee-shifting provision of that very statute to garner an award of fees incurred with respect to those claims. With regard to plaintiffs' defamation claims (as to which the Court granted summary judgment in favor of defendant Paul), the Court concludes that the factual thread connecting those claims to the ERISA causes of action is too tenuous to support an award of fees relating thereto. Thus, after examining plaintiffs' counsel's billing records, the Court will disallow a total of 257.9 hours, detailed in Appendix C. According to the Court's calculations, these 257.9 hours break down as follows: 177 hours for King ($26,550.00), 52 hours for Abigail Kelman ($7,800.00  her hourly rate is $150), 19.3 hours for Beatty ($1,737.00), 8.6 hours for Harlan ($1,849.00), and one hour for Buckley ($225.00). The total disallowed amount comes to $38,161.00.[11]

G. Adjustment of the Lodestar
Plaintiffs contend that an enhancement of the lodestar is warranted because their attorneys rendered exceptional services. In order to justify an upward deviation from the lodestar, a fee applicant must offer specific evidence demonstrating not only that outstanding service was rendered and an excellent result achieved, but also that both the service and the result "were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended." In re Apex Oil Co., 960 F.2d 728, 732 (8th Cir.1992); see Blum, 465 U.S. at 899, 104 S.Ct. 1541. Although plaintiffs' counsel unquestionably achieved a very favorable result in this case, it was not an extraordinary one considering the number of hours and the hourly rates charged. The Court concludes that plaintiffs have not met their burden of demonstrating that their attorneys' work is deserving of a fee enhancement.

H. Plaintiffs' Request for Leave to File a Supplemental Billing Statement for Fees Incurred in Preparing Their Fee Application
Plaintiffs assert that they are entitled to attorney's fees for the time that their counsel spent in preparing their motion for an award of attorney's fees, and seek leave to file a supplemental statement of professional services reflecting same. Although the Court believes that the reasonable time spent preparing a motion for an attorney's fee award ordinarily should be included in calculating a reasonable fee, see Anderson v. Director, Office of Workers Compensation Programs, 91 F.3d 1322, 1325 (9th Cir.1996) (observing that "uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received"); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183-84 (2d Cir. 1996); O'Farrell v. Twin Bros. Meats, Inc., 889 F.Supp. 189, 192 (E.D.Pa.1995), it will not grant such leave here. Plaintiffs should have been able to claim most, if not all, of time spent in preparing the fee petition in the original motion for attorney's fees itself. Inexplicably, they did not do so.[12] To allow *1141 them now to seek an award of those additional fees would reward that failure and impose an unnecessary and unjustifiable burden on the Court.

IV. Conclusion

In sum, the Court will tax defendants plaintiffs' costs in the amount of $14,463.80, and grant plaintiff's motion for attorney's fees in the amount of $682,473.88. The costs figure excludes the expense of the daily trial transcript ($1,741.00), all of the photocopying charges ($29,449.93), and the residual travel and subsistence expenses of Philip Smith and Scott King ($902.68). The attorney's fees award reflects the inclusion of plaintiffs' photocopying charges ($29,449.93) and the expense of obtaining a daily transcript ($1,741.00), and the disallowance of the time charges detailed above (amounting to a total of $75,631.00). The Court will also grant the motion for protective order in the amount of $7,321.66. The Court observes that the award  an amount equivalent to less than eight percent of plaintiffs' total recovery  is certainly reasonable on its face, and, for the reasons set forth above, the Court concludes that it is reasonable in fact as well. Finally, given the intertwined nature of the claims on which plaintiffs prevailed, the Court elects not to apportion the costs and fees among the various defendants. See Anderson v. Flexel, Inc., 47 F.3d 243, 251 (7th Cir.1995).
Accordingly,
IT IS HEREBY ORDERED that defendant's objections to plaintiffs' bill of costs [# 152] are granted in part and denied in part and that plaintiffs' motion for attorney's fees [# 154] is granted in part and denied in part.
IT IS FURTHER ORDERED that the Clerk shall tax allowable costs in the amount of $14,463.80 to defendants in this case.
IT IS FURTHER ORDERED that plaintiffs shall recover of defendants the reasonable attorney's fee of $682,473.88.
IT IS FURTHER ORDERED that plaintiffs' motion for protective order [# 80] is granted, and that defendants shall pay plaintiffs the sum of $7,321.66.
IT IS FURTHER ORDERED that plaintiffs' request for leave to file a supplemental statement of professional services reflecting the time that their counsel spent in preparing their motion for an award of attorney's fees is denied.

Appendix A
(1) 1.0 hours of King's time on August 22, 1996
(2) 2.0 hours of King's time on August 4, 1997
(3) 3.0 hours of King's time on August 6, 1996
(4) 3.0 hours of King's time on November 10, 1997
(5) 4.0 hours of King's time on January 22, 1998
(6) 5.1 hours of King's time on January 23, 1998
(7) 4.1 hours of Beatty's time on January 29, 1998
(8) .5 hour of Beatty's time on March 5, 1998.

Appendix B
(1) .3 hour of Buckley's time on January 27, 1997
(2) .8 hour of Buckley's time on March 31, 1997
(3) .8 hour of Harlan's time on March 31, 1997
(4) .5 hour of King's time on March 31, 1997
(5) .3 hour of Harlan's time on April 1, 1997
(6) .6 hour of Buckley's time on April 1, 1997
(7) .3 hour of Buckley's time on April 3, 1997
(8) 2.0 hours of Beatty's time on June 24, 1997

Appendix C
(1) 3.8 hours of King's time on March 25, 1997
(2) 3.6 hours of King's time on March 26, 1997
(3) 0.2 hour of King's time on March 28, 1997
(4) 2.1 hours of King's time on April 11, 1997
(5) 2.0 hours of King's time on April 21, 1997
(6) 4.0 hours of King's time on August 28, 1997
(7) 4.0 hours of Kelman's time on September 4, 1997
(8) 4.0 hours of Kelman's time on September 8, 1997
(9) 4.0 hours of King's time on September 12, 1997
*1142 (10) 3.5 hours of King's time on September 18, 1997
(11) 0.5 hour of Harlan's time on September 19, 1997
(12) 6.6 hours of King's time on September 20, 1997
(13) 0.9 hour of King's time on September 20, 1997
(14) 6.1 hours of King's time on September 21, 1997
(15) 7.5 hours of King's time on September 22, 1997
(16) 2.0 hours of Beatty's time on September 24, 1997
(17) 2.0 hours of King's time on September 25, 1997
(18) 2.8 hours of King's time on September 26, 1997
(19) 2.0 hours of King's time on September 29, 1997
(20) 3.0 hours of King's time on September 30, 1997
(21) 4.0 hours of Kelman's time on September 30, 1997
(22) 1.5 hours of Kelman's time on October 1, 1997
(23) 0.5 hour of Harlan's time on October 2, 1997
(24) 6.2 hours of King's time on October 2, 1997
(25) 2.0 hours of Beatty's time on October 3, 1997
(26) 4.0 hours of King's time on October 6, 1997
(27) 3.0 hours of Kelman's time on October 6, 1997
(28) 4.0 hours of Kelman's time on October 7, 1997
(29) 7.5 hours of King's time on October 7, 1997
(30) 7.0 hours of King's time on October 8, 1997
(31) 1.7 hours of Beatty's time on October 9, 1997
(32) 3.0 hours of Kelman's time on October 9, 1997
(33) 5.0 hours of King's time on October 9, 1997
(34) 2.2 hours of King's time on October 9, 1997
(35) 1.0 hour of Beatty's time on October 10, 1997
(36) 1.0 hour of Kelman's time on October 10, 1997
(37) 4.2 hours of King's time on October 10, 1997
(38) 6.1 hours of King's time on October 12, 1997
(39) 5.0 hours of Kelman's time on October 13, 1997
(40) 4.0 hours of King's time on October 13, 1997
(41) 4.8 hours of Kelman's time on October 14, 1997
(42) 8.0 hours of King's time on October 14, 1997
(43) 3.1 hours of Beatty's time on October 15, 1997
(44) 6.9 hours of King's time on October 15, 1997
(45) 2.0 hours of Kelman's time on October 15, 1997
(46) 8.0 hours of King's time on October 16, 1997
(47) 6.9 hours of King's time on October 17, 1997
(48) 12.9 hours of King's time on October 19, 1997
(49) 2.4 hours of Kelman's time on October 19, 1997
(50) 9.6 hours of King's time on October 20, 1997
(51) 5.3 hours of Kelman's time on October 20, 1997
(52) 3.0 hours of Harlan's time on October 20, 1997
(53) 8.1 hours of Beatty's time on October 21, 1997
(54) 8.4 hours of King's time on October 21, 1997
(55) 5.3 hours of Kelman's time on October 21, 1997
(56) 3.5 hours of Harlan's time on October 21, 1997
(57) 1.4 hours of Beatty's time on October 22, 1997
(58) 0.3 hour of Kelman's time on October 27, 1997
(59) 0.1 hour of Kelman's time on October 28, 1997
(60) 2.0 hours of King's time on November 4, 1997
(61) 2.0 hours of King's time on November 6, 1997
(62) 2.0 hours of King's time on November 10, 1997
(63) 2.0 hours of Kelman's time on November 11, 1997
(64) 1.0 hour of King's time on November 11, 1997
(65) 2.0 hours of King's time on November 12, 1997
(66) 0.3 hour of Kelman's time on November 13, 1997
(67) 1.0 hour of King's time on November 13, 1997
(68) 6.0 hours of King's time on November 13, 1997
(69) 0.1 hour of Harlan's time on November 18, 1997
(70) 1.0 hour of Harlan's time on November 19, 1997
*1143 (71) 1.0 hour of Buckley's time on November 19, 1997
NOTES
[1] An amended judgment has been entered today to correct certain clerical and interest errors. The total judgment, as amended, is $8,764,773.19.
[2] The Court did not require defendants to provide their billing statements in this case, although the Court frequently does so when one party challenges the reasonableness of the other party's attorney's fees. Had the Court done so, it believes that defendants may well have withdrawn some of their claims of "unreasonableness."
[3] For the same reason, the Court will allow the $100.00 in attendance and mileage costs for two witnesses whom, according to defendants, plaintiffs deposed for the sole purpose of furthering their defamation claims.
[4] According to plaintiffs, Smith is an expert on steel-related issues, and King is a certified public accountant with the firm of Price Waterhouse.
[5] Plaintiffs stated in a January 23, 1998, memorandum concerning this issue that the $1,604.41 constituted two hours of deposition preparation time, three hours of actual deposition time, and one-half of Smith's round-trip airfare ($354.41) between Pittsburgh, Pennsylvania, and St. Louis, Missouri. However, Smith's invoices, which are attached to that memorandum, indicate that his hourly rate is $175.00. If that is correct, then the sum paid by defendants should have been $1,229.41 (i.e., $875.00 (five hours times $175.00) plus $354.41). Instead, defendants apparently paid Smith at an hourly rate of $250.00.
[6] In their January 23, 1998, memorandum, plaintiffs stated that the $1,281.50 represented two hours of deposition preparation time, one and one-half hours of actual deposition time and one-half of King's round-trip airfare between Cleveland, Ohio and St. Louis, Missouri ($109.00). Given King's $335.00 hourly rate, it appears that the $1,281.50 figure is correct.
[7] WVUH carves out a special category of litigation expense (i.e., expert witness fees) that cannot be recovered absent express statutory authority. It does not in any way undercut the concept that, except with regard to expert witness fees, reasonable attorney's fees can include the out-of-pocket expenses normally billed to a client by counsel. See WVUH, 499 U.S. at 87 n. 3, 111 S.Ct. 1138; see also Jenkins, 491 U.S. at 286-89, 109 S.Ct. 2463 (discussing "market rates and practices" and the "discipline of the market" as the force that should control what out-of-pocket expenses may be included in attorney's fees recoverable under § 1988).
[8] Defendants contend that the Court no longer has jurisdiction over plaintiffs' motion for protective order. The Court is of a contrary view. See Schering Corp. v. Vitarine Pharms., Inc., 889 F.2d 490, 495 (3d Cir.1989) (observing that after the entry of final judgment and the filing of a notice of appeal, the district court "retains the power to adjudicate collateral matters such as applications for counsel fees"); Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1078 (7th Cir.1987) (same), petition for cert. dismissed, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988); cf. Ellis v. United Airlines, 73 F.3d 999, 1011 (10th Cir.) (finding that district court did not abuse its discretion in denying plaintiffs' motion to compel defendant to pay travel and deposition preparation expenses incurred by plaintiffs' expert witness as untimely, where plaintiffs filed motion four and one-half months after the court entered final judgment in the case), cert. denied, 517 U.S. 1245, 116 S.Ct. 2500, 135 L.Ed.2d 191 (1996).
[9] The Court thus finds defendants' contention that the paralegal rates set forth in plaintiffs' fee application are unreasonably high to be without merit.
[10] The hours listed by defendants total 439.40, but include 8.8 hours billed by Willis on August 18, 1997, and for which the corresponding time entry reads, "Indexing of documents; prepare documents for deposition exhibits of S. Lattanzi."
[11] The Court has considered defendants' argument that the billing statements of plaintiffs' counsel are insufficiently specific. The Court rejects that argument, although it would have preferred to see slightly more detail in those statements.
[12] The Court notes that on August 11, 1998, it gave plaintiffs two additional days within which to file their motion for an attorney's fees award.