CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al. Plaintiffs,

v.

HUNT TRUCK LINES, INC., Defendant.

No. 96 C 5634.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 26, 2000.

Jon K. Stromsta, Robert Anthony Coco, James Patrick Condon, John Joseph Franczyk, Jr., DesPlaines, IL, Terence George Craig, Alexandria, VA, for Plaintiffs.

Mark Anthony Spognardi, McBride, Baker & Coles, Chicago, IL, Herve H. Aitken, Roy A. Sheetz, Taylor, Thiemann & Aitken, Alexandria, VA, for Defendant.

### ORDER

NORDBERG, Senior District Judge.

Before the court are three requests for attorneys' fees and non-taxable costs pursuant to 29 U.S.C. § 1132(g)(1) filed by defendant Hunt Truck Lines, Inc. ("Hunt"). The first request was filed after this court granted summary judgment in favor of Hunt. *See Central States, Southeast And Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.,* 70 F.Supp.2d 840 (N.D.Ill.1999). This court first ruled that fees should be awarded to Hunt pur-

suant to this request, and then ordered the parties to brief the issue of what amount of fees were reasonable. *See* 9/24/99 Order.

Around the time the first fee request was filed, Central States filed a notice of appeal of this court's order granting summary judgment. The appeal was consolidated with the appeal of a related case before Judge Shadur, involving these same parties. Before this court issued a final ruling on the first request, the Seventh Circuit issued its ruling in the consolidated appeal, affirming this court's order granting summary judgment to Hunt. *See Central States, Southeast And Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.,* 204 F.3d 736 (7th Cir.2000). Hunt then filed its second fee request, labeled as a "supplemental" request, which seeks fees related to the appeal and to the preparation of the first two fee requests.

## I. The First Fee Request.

As noted above, we have already ruled that reasonable fees and costs should be awarded on the first request, which relates to the litigation in the district court. Hunt seeks $44,120 in attorneys' fees and $1,222.22 in non-taxable costs, and has filed affidavits from its lead and local counsel as well as copies of monthly invoices from each firm.[1] In attempting to calculate non-taxable costs, Hunt states that it had difficulty segregating those costs attributable to this case from those costs attributable to the related case before Judge Shadur. To account for this problem, Hunt used a formula. It first added up the total costs by taking only those costs billed in the months in which counsel also billed time to this case. It then discounted that total by 80% to account for the possibility that some costs not attributable to the litigation may have been included.[2]

In its response brief, Central States does not challenge the reasonableness of the various attorneys' hourly billing rates and only raises a few, modest objections to the specific requests for fees and costs. The objections are as follows: (1) attorneys' fees for meetings and telephone conferences in which more than one of Hunt's attorneys were present; (2) computerized legal research; (3) certain duplicative requests; and (4) secretarial overtime. With the exception of secretarial overtime, we do not believe that these objections are warranted.

First, Central States argues that—as a general rule—Hunt should not be allowed to recover for *any* meeting or telephone conference in which two or more of its attorneys were present. We disagree. Hunt has provided a reasonable explanation. It says that its counsel employed a team concept to the overall litigation, with attorneys working on separate projects, or on separate sections of the same project. Along this line, we agree with the comments made by one district court, which rejected the same argument Central States is making here:

> Having several attorneys attend the same meeting or participate in the same conference call promotes the exchange of different perspectives on a particular legal strategy and decreases the possibility of some misunderstanding arising at a later date. Indeed, where a number of different attorneys are working on the same matter, arranging for most or all of them, rather than just one of them, to sit in on a conference may be more efficient, as it avoids the one attendee having to repeat what was said to colleagues also working on the case.

*Emmenegger v. Bull Moose Tube Co.,* 33 F.Supp.2d 1127, 1139 (E.D.Mo.1998). Because Central States has not offered any specific reason for rejecting the particular time entries other than this general rule, we will not reduce the fees based on this objection.

---

1. Non-taxable costs include postage, telephone charges, travel expenses, facsimile charges and courier and express delivery charges.

2. Hunt apparently applied this 80% reduction formula only to the those costs billed by lead counsel and not to those billed by local counsel.

Second, Central States argues that computerized legal research expenses (*i.e.* Westlaw and Lexis charges) are overhead that may only be recovered as part of the attorney's hourly fee. Central States has not cited to any Seventh Circuit case to support this argument, and it has not disputed Hunt's assertion that its counsel routinely bills its clients separately for such computer research. *See generally Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,* 63 F.3d 516, 526 (7th Cir.1995) (rejecting the argument that computerized legal research expenses should be included as overhead). Therefore, we find that this objection is without merit.

Third, Central States argues that certain specific requests are duplicative or are not-recoverable. For example, it says that in certain instances Hunt's local counsel and its primary counsel billed for the same costs. In its reply brief, Hunt has either provided an adequate explanation why certain entries in fact are not duplicative as they appear to be or instead has agreed to reduce its fee request to account for the duplication. Thus, this issue has been addressed to our satisfaction.

Finally, Central States argues that Hunt should not be allowed to recover for secretarial overtime. Hunt argues in response that secretarial overtime can be recovered in extraordinary circumstances. However, Hunt has not sufficiently explained why the particular expenses were extraordinary. Therefore, we will not allow them.

In sum, we will reduce the non-taxable costs by $1,116.73, which consists of $1,074.57 for certain duplicative entries, $16.58 for certain non-recoverable local expenses, and $25.58 for secretarial overtime. We therefore award $44,120 in attorneys' fees and $105.49 in non-taxable costs on the first fee request.

**3.** This section provides that this court has the discretion to award reasonable attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1).

**4.** Even if Central States had made the argument, we would reject it under the two tests

## II. The Second Fee Request.

We now turn to the second request, which consists of two parts: (i) fees relating to the appeal, and (ii) fees relating to the preparation of the two fee requests. Central States does not object in principle to the recovery of fees related to the preparation of the fee requests but believes that the particular fees and costs sought by Hunt are excessive and should be reduced. It does object, however, in principle to the recovery of any appeal-related fees based on a waiver argument described below. Central States also argues that the appeal-related fees, if allowed, should be reduced because they are excessive.

### A. Waiver Of Appeal–Related Fees.

This court previously determined that fees and costs in the first request should be awarded to Hunt under § 1132(g)(1).[3] *See* 9/24/99 Order. This court did so by applying the "five factor" and the "substantially justified" tests used by the Seventh Circuit in this context. Among other things, we found that the award was justified based on the fact that Central States was culpable in "jumping the gun" when it prematurely issued its notice for demand. On appeal, the Seventh Circuit affirmed this court's order and reasoning and noted at the end of its opinion that Central States easily could have corrected its initial premature notice for demand by issuing a second timely notice: "Why didn't Central States save everyone a big headache and pursue this course of action a long, long time ago?" *Hunt Truck Lines,* 204 F.3d at 743.

In its response brief, Central States has not directly argued that its appeal was substantially justified or that there was any special circumstance that weighs against awarding appeal-related fees and costs.[4] Instead, it relies on a more technical argument, arguing that Hunt made a

because Central States advanced the same general arguments on appeal as it did in this court. *See generally Production And Maintenance Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1407 (7th Cir.1992) (awarding appeal-related fees based on the

procedural mis-step by failing to directly ask the Seventh Circuit for fees and costs when this case was pending before that court. In other words, Central States argues that Hunt can seek appeal-related fees and costs *only* from the Seventh Circuit and not from this court and that it has effectively waived its right to such fees. This rule makes sense, according to Central States, because the Seventh Circuit would have been in the "optimal position" to rule on this issue.[5]

We are not persuaded by this argument. Whether or not policy arguments may favor enacting such a rule, it is not clear to us that such a rule exists in this circuit. We are not aware of any statutory language or Seventh Circuit case or rule that requires a party in this position to seek appeal-related fees under § 1132(g) *only* from the Seventh Circuit. In fact, § 1132(g)(1) seems to have been written based on the assumption that it was the district court that would award such fees. *See generally Meredith v. Navistar Int'l Trans. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991) (noting that it is "normally" the district court that grants fees under § 1132(g)(1)). The only case that Central States cites to support its argument is a Tenth Circuit case—*Hoyt v. Robson Cos., Inc.*, 11 F.3d 983 (10th Cir.1993). However, *Hoyt* did not involve a request for fees under § 1132(g)(1). In sum, in light of this uncertainty, it seems unfair to hold that Hunt waived its right to seek such fees.

**B. Objections To The Second Fee Request.**

We now address Central States' argument that the fees and costs associated with both the appeal and the preparation of the fee requests are unreasonable and excessive. Central States mounts a two-tiered attack. It criticizes specific fees

and costs on the grounds of excessiveness, duplication, or vagueness. It also generally criticizes the total amount of post-judgment fees, arguing that it is grossly disproportionate when compared to the total amount of fees sought for the district court action. We will analyze the specific objections first, and then turn to the more general objection.

**1. Specific Objections.**

In this second request, Hunt asks for $102,427 in supplemental attorneys' fees and $2,554.30 in supplemental non-taxable costs. As it did in its first request, Hunt has submitted copies of its counsels' monthly invoices, which contain a description of the legal work done and costs. In its response brief, Central States sets forth number of objections to specific entries on these invoices. Its chief criticism is that Hunt did not account for the fact that the appeal in this case was consolidated with the appeal of the related case before Judge Shadur.

With regard to attorneys' fees, we do not need to address most of Central States' objections because Hunt in its reply brief has agreed to reduce its request to account for them. As to the remaining objections concerning attorneys' fees, we do not agree with the argument made by Central States and instead are satisfied with the explanation provided by Hunt. For example, as to the vagueness of certain entries, Hunt has provided additional description. As to other criticisms, such as computerized legal research, we have already ruled against Central States in Section I above.

As to costs, we find that certain of Central States' objections have merit, although altogether they only result in a very modest reduction in the overall reward. As we have noted above, we do not believe that secretarial overtime is justified in this

---

fact that the party "repeat[ed]" the same unjustified argument "in [the appellate] court [that] it did in the district court").

**5.** Central States says that Hunt could have sought fees under either Fed. R.App. P. 38 or

§ 1132(g)(1). The Seventh Circuit's mandate did not address the issue of fees but did tax against Central States the cost of Hunt's reproduction of its briefs.

case. In addition, as more fully explained in Central States' response brief, there are certain other costs that are not justified because they are not substantiated, vague, or generally not recoverable.

For lead counsel, the following costs will not be allowed: (1) March 17, 1999 invoice—travel expenses ($103.37); (2) May 14, 1999 invoice—photo copy expenses ($152.25), secretarial overtime ($193.62), travel expenses ($30), and airfare expenses ($272); (3) June 18, 1999 invoice; airfare expenses ($228) and taxi expenses ($155); and (4) December 7, 1999—secretarial overtime ($38.96). Because these costs were already discounted by 80% under the formula used by Hunt, we will therefore reduce this total ($1173.20) by 80%, leaving $234.64.

For local counsel, the following costs will not be allowed: (1) March 1, 1999 invoice—auto rental ($101.71) and additional secretarial assistance ($88.71); (2) April 1, 1999 invoice—cab fare ($32) and court reporter ($65); (3) May 1, 1999 invoice—cab fare ($26); (4) June 1, 1999 invoice—cab fare ($4), court reporter ($95), filing fees ($105), and previously issued check voided ($39); and (5) July 1, 1999 invoice—additional secretarial assistance ($103.16). The 80% reduction formula was not previously applied to these costs. Therefore, we will subtract their total amount ($659.58) from the overall costs. Combining these two amounts ($234.62 plus $659.58) results in a reduction of $894.22 from the costs sought by Hunt.[6]

With these modifications, Hunt's second fee request has been reduced by almost $20,000. Specifically, the amounts are: $83,032 in attorneys' fees; $1,505.82 in legal fees related to computerized legal research; and $1,358.92 in nontaxable costs.

### 2. A General Objection.

We now turn to the more general objection that the overall amount is too much when compared to the first request. Specifically, Central States argues that the post-judgment amount is almost twice as much as the amount for the original action in this court, which took over three years to complete. In its reply brief, Hunt points out that the $83,032 in post-judgment attorneys' fees relates to what are essentially two separate "cases"—the appeal and the fee preparation. When viewed in this manner, it says that it is only seeking (approximately) $41,500 for the appeal and $41,500 for the fee preparation, which it notes is slightly less than the $43,044.43 it has sought for the district court litigation.

We are not entirely sure how to deal with this general objection, especially given that Hunt has already agreed to the majority of the specific objections made by Central States and given that we have concluded that the remaining specific objections are not justified. With regard to the appeal-related fees, we do not find that this general objection has merit. However, with regard to the total amount sought for the preparation of the fee request, we are concerned that it is still too high despite being reduced somewhat already and despite the fact that the fee litigation did involve two rounds of briefing with several legal arguments. We therefore have reviewed those time entries, and have decided to reduce the attorneys' fee award by an additional $10,000. This results in a reduction of approximately 25% of the fees related to this segment of the case, and we think it addresses the general concern that the overall amount is excessive.[7]

---

6. We note that Central States, in its response brief, never listed the exact dollar amounts that corresponded to the particular time entries that it believed should be eliminated. These fee requests are already tedious enough without the added difficulty of digging through a stack of invoices looking for the specific dollar amounts and then totaling those amounts up. In short, next time Cen-

tral States should "do the math," thereby saving this court valuable time.

7. Reducing the request in this lump-sum manner is admittedly an imprecise method and not one typically used by this court. However, given the way the invoices were prepared, with general descriptions of the ex-

### III. Supplemental Briefing.

Shortly after this court had prepared its initial draft of this opinion addressing the first two fee requests, but before that opinion was issued, Central States filed a motion for leave to file a supplemental brief. The reason given for wanting to file a supplemental brief was to address the impact of the Seventh Circuit's ruling in this case. This court granted Central States leave to file a supplemental brief and also allowed Hunt to file a supplemental response.

The gist of the supplemental brief filed by Central States is that, although Hunt prevailed in this court, it merely achieved a "pyrrhic victory" because ultimately Central States will recover final withdrawal payments from Hunt in the case now before Judge Guzman, which concerns the revised withdrawal liability assessment. In other words, according to Central States, Hunt has achieved little by forestalling interim payments given that it eventually will have to make final withdrawal payments. Central States is thus re-arguing a point already decided by this court in its prior order; namely, whether Central States' position in this litigation was substantially justified. *See* 9/24/99 Order at 2; 29 U.S.C. § 1132(g)(1).

We are not persuaded by this additional argument. Central States overlooks the important distinction we have already made several times in this case between the separate questions of interim and final withdrawal liability. Thus, even if Hunt ultimately loses on the question of final withdrawal liability, that does not mean that it was not the prevailing party with regard to the question of interim liability. In short, the reasons set forth in our 9/24/99 order for awarding fees remain unchanged. What Central States really seems to be complaining about is the fact that Hunt has continued to resist liability for final withdrawal payments in the case

before Judge Guzman, despite language in the Seventh Circuit's decision stating that Hunt likely would be liable for final payments under a revised and timely demand. *See Hunt,* 204 F.3d at 743 ("In fact, it appears certain that Central States will (and should) receive the full withdrawal fee to which it is entitled."). That is a matter before Judge Guzman and, as we have said, is separate from the issue that was before this court.

We now address what, in effect, is a third request for fees. In its supplemental response brief, Hunt requests fees for being required to appear before this court on June 8, 2000 (the date Central States presented its motion for leave to file a supplemental memorandum) and for preparing the supplemental response memorandum. Hunt requests $11,100 in additional attorneys' fees.[8] It also requests $671.50 in non-taxable costs, which are the travel costs for one of the attorneys from Hunt's lead counsel to fly to Chicago for the presentment of the motion on June 8th. In contrast to its first two fee requests, Hunt has not submitted monthly invoices nor has it otherwise described the specific work done. Central States has not moved for leave to file any objections to this third request.

We have reviewed the request and conclude that $2,400 in attorneys' fees represents a reasonable amount for the work done on the supplemental briefing. This amount represents 2 hours for reviewing the motion and attending court and 10 hours for preparing the response brief. As noted above, Central States' supplemental brief largely raised issues already addressed by this court, and therefore Hunt was not required to delve into new or complicated issues in filing its response. Moreover, Hunt has not provided specific descriptions of the actual work done, making it hard to know whether the work was

---

act work done, it is difficult to say that a particular time entry by itself is unreasonable.

**8.** This $11,100 figure consists of 46.5 hours billed by the lead law firm at $200 an hour ($9300) and 9 hours by local counsel also at $200 an hour ($1800).

justified. Finally, we do not find reasonable Hunt's explanation for why it needed to have an attorney fly to Chicago for the presentment of the motion, rather than sending an attorney from its local counsel. Therefore, we will disallow the $671.50 in non-taxable costs.

### CONCLUSION

For the reasons stated above, this court orders Central States to pay Hunt $44,120 in attorneys' fees and $105.49 in non-taxable costs on the first fee request; to pay Hunt $73,032 in attorneys' fees, $1,505.82 for computerized legal research, and $1,358.92 in nontaxable costs on the second request; and to pay Hunt $2,400 in attorneys' fees on the third request.